IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EVA BARTLETT, for
MARTIN BARTLETT,
deceased,
          Plaintiff,

vs.                                   **No. CIV 01-170 MV/LCS**

LARRY G. MASSANARI,[1] ,
Acting Commissioner,
Social Security Administration,

          Defendant.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court upon Plaintiff's Motion to Reverse or Remand

the Administrative Decision filed September 4, 2001 (*Doc. 12*).  The Commissioner of Social

Security issued a final decision denying the Plaintiff his claims for a period of disability, disability

insurance benefits, and supplemental security income.  The United States Magistrate Judge,

having considered the Motion, the memoranda submitted by the parties, the administrative record

and the applicable law, finds that the motion is not well taken and recommends that it be

DENIED.

**PROPOSED FINDINGS**

**I. PROCEDURAL RECORD**

---

[1]      Effective March 29, 2001, Larry G. Massanari was appointed to serve as Acting Commissioner of Social Security. Pursuant to FED. R. CIV. P. 25 (d), Larry G. Massanari, Acting Commissioner of Social Security, is substituted for William A. Halter, Acting Commissioner of Social Security, as the defendant in this action.

1.      The record indicates that Mr. Bartlett's case was presented on two different occasions before an Administrative Law Judge (ALJ). On the first occasion, the ALJ issued an unfavorable decision denying his application for a period of disability, disability insurance benefits, and supplemental security income. *See* R. at 13. The Plaintiff appealed this decision which was denied by the Appeals Council. *See* R. at 3. The Plaintiff subsequently filed a complaint in federal court, in cause number CIV 99-557 LH/RLP. The case was eventually remanded on Defendants' Unopposed Motion to Remand for Further Administrative Proceedings. The Appeals Council, upon order from the district court, vacated the final decision of the Commissioner and assigned the case for another hearing pursuant to specific orders of the Council. The following procedural record outlines those two hearings.

2.      Martin Bartlett filed an application for a period of disability, disability insurance benefits, and supplemental security income with the Social Security Administration on January 16, 1996 alleging a disability since December 20, 1995 due to a broken leg. *See* R. at 62. The Plaintiff's application was denied at the initial level and at the reconsideration level. *See* R. at 52-53. Mr. Bartlett appealed the denial of his claim by filing a Request for Hearing by an Administrative Law Judge.  *See* R. at 54.

3.      Administrative Law Judge John J. Wren held a hearing, the first of the claimant's two hearings, on April 17, 1997 and issued his decision on May 13, 1997. *See* R. at 13. In that decision, the ALJ found that Mr. Bartlett was not disabled because he had a residual functional capacity for at least light work and that he could return to his past relevant work as an aluminum finisher but for his alcoholism. *See* R. at 15. Mr. Bartlett subsequently filed a request for review of hearing decision

to the Appeals Council which was denied. On May 17, 1999, Mrs. Eva Bartlett filed a complaint and

a motion to remand in federal court.[2]  The Commission subsequently stipulated to remanding the case

for further administrative proceedings.

4.       On May 2, 2000, the Appeals Council issued an order vacating the final decision of

the Commission and remanding the case to an Administrative Law Judge for further proceedings

consistent with its order. *See* R. at 166. Specifically, the Appeals Council stated

> [t]he Administrative Law Judge will obtain any updated medical records that may be
> available . . . The Administrative Law Judge should reevaluate all the evidence and
> issue a new decision which follows the proper legal standard for cases involving DAA
> [drug and alcohol abuse]. The issue of the claimant's past relevant work should be
> addressed, considering only work in the last 15 years. The claimant's residual
> functional capacity should be compared with the specific demands of his past relevant
> work. If it is found that the claimant could not have done this past relevant work,
> vocational expert testimony should be arranged regarding other jobs. *See* R. at 166-
> 67.

5.       Upon remand, an Administrative Law Judge held the claimant's second hearing

on September 22, 2000 and a decision was entered on December 14, 2000. *See* R. at 142. The ALJ

made the following conclusions according to the sequential analysis set forth in 20 C.F.R. §

404.1520(a)-(f) and *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993): the claimant had

not engaged in substantial gainful activity since his alleged onset date; the severity of the claimant's

impairments did not meet or equal a listed impairment; the claimant had "severe" impairments

consisting of chronic back pain, status post left tibia and fibula fracture, left knee pain, mile to

moderate degenerative changes of the lumbar spine, coronary artery disease, and alcoholism; the

---

[2]       Martin Bartlett passed away on May 7, 1999 due to coronary heart disease. *See* R. at 178. His wife, Eva
Bartlett filed suit on behalf of his interest in disability insurance benefits.

claimant's subjective complaints and functional limitations, including pain were not supported by the

evidence as a whole in the disabling degree alleged and therefore lacked credibility; and the claimant

retained the residual functional capacity for a full range of medium work. *See* R. at 142-48.

6.       Thereafter, the Plaintiff filed her complaint on behalf of her deceased husband for

court review of the ALJ's decision on February 9, 2001 (*Doc. 1*).

## II. STANDARD OF REVIEW

7.       The standard of review in this Social Security appeal is whether the Commissioner's

final decision is supported by substantial evidence and whether he applied correct legal standards.

*See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).

Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion."

*Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting

*Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)).  A decision of an ALJ

is not supported by substantial evidence if other evidence on the record overwhelms the evidence

supporting the decision.  *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

8.       In order to qualify for disability insurance benefits, a claimant must establish a severe

physical or mental impairment expected to result in death or last for a continuous period of twelve

months, which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C.

§423(d)(1)(A); *see also Thompson*, 987 F.2d at 1486. The regulations of the Social Security

Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing

disability applications. *See* 20 C.F.R. § 404.1520 (a-f) and 416.920.  The sequential evaluation

process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987

F.2d at 1487.

9.      At the first four levels of the sequential evaluation process, the claimant must show

he is not engaged in substantial gainful employment, he has an impairment or combination of

impairments severe enough to limit his ability to do basic work activities, and his impairment meets

or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R.

Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§

404.1520 and 416.920.   At the fifth step of the evaluation, the burden of proof shifts to the

Commissioner to show the claimant is able to perform other substantial gainful activity considering

his residual functional capacity, age, education, and prior work experience. *See id.*

### III. ADMINISTRATIVE RECORD

10.      The record reveals that the first documented impressions regarding Mr. Bartlett's

left leg were in May of 1995. *See* R. at 107. The Plaintiff received a surgical consult from James J.

Castle, D.O. *Id*. Dr. Castle remarked that Mr. Bartlett had "significant post traumatic degenerative

arthritis of the left ankle, history of old comminuted fracture of the tibia and fibula, status post

operative reduction and internal fixation of the left distal fibula with retained bone screw that may be

impinging upon the lateral aspect of the talus." *See* R. at 107. The doctor discussed the possibility

of surgery and/or other medical options with Mr. Bartlett. However, Mr. Bartlett stated he did not

want to have any type of surgical or alternative treatment at that time. *See* R. at 107-08.

11.      In December of 1995, Mr. Bartlett broke his leg while moving a refrigerator from a

pick-up truck. *See* R. at 99. He was admitted into the hospital three days later. *Id*. The attending

physician, Earl Latimer, III, M.D. diagnosed Mr. Bartlett with a lateral tibial plateau fracture and

recommended surgery. *Id*. The doctor's physical examination revealed that Mr. Bartlett was a

generally healthy man and was in no apparent distress. *Id*. On December 24, 1995, Mr. Bartlett

underwent surgery. *See* R. at 91. A plate and six screws were placed in his left leg. *Id.*

12.     For the following four months, Mr. Bartlett was seen by Dr. Lamiter for post-

operative checkups. *See* R. at 112 to 116. In January of 1996, Dr. Lamiter stated that the Plaintiff's

range of motion was good and that he was going to hold off on physical therapy. *See* R. at 113. The

doctor also noted that Mr. Bartlett would need crutches for a minimum of three months and would

unlikely return to work for at least six months. *See* R. at 114. In April of 1996, Dr. Lamiter stated

that Mr. Bartlett has

> been having no pain and has been walking on the extremity more than what was told
> to do. He has been using one crutch. On exam his incisions is well healed and the knee
> is non-tender. He lacks approximately 5 degrees of full extension, but has full flexion.
> He can be full wight bearing with no pain. . . . X-rays two views of the knee show that
> the fracture is well healed. There may have been some slight settling of the lateral
> tibial plateau, but it is still lined up well. I feel that he may be full weight bearing since
> he has already done that and I did give him a work release for April 1. *See* R. at 112.

13.     In December of 1996, Mr. Bartlett was seen by M. Pradeep Kumar, M.D. at

the Chaves County Community Health Center. *See* R. at 120. Mr. Bartlett complained to Dr. Kumar

of intermittent pain in his lower back for the past ten years. *Id.* He also complained of pain in his left

leg and loss of balance but denied any weakness in his legs. *Id.* Dr. Kumar also noted that Mr. Bartlett

was a frequent smoker and drinker. *Id.* Weeks later, David Sterling, M. Ed. evaluated the Plaintiff

for an assessment of his emotional issues. *See* R. at 125. Mr. Bartlett complained of problems with

"walking more than a block, standing for a length of time, with bending, stooping, kneeling, and with

arthritis in both hands." *Id.* Mr. Bartlett also claimed "disability due to the inability to handle stress,

which he describ[ed] as anger outbursts toward his wife." *Id.* Mr. Sterling noted that Mr. Bartlett had

difficulty providing chronological order of his employment and concluded that Mr. Bartlett needed

to be assessed for alcohol or chemical dependency. *See* R. at 125-26.

14.     The last written evaluation in the record is dated May 5, 1998. *See* R. at 208. Mr. Bartlett was examined by David W. Kurtz, M.D. Dr. Kurtz' impression as to the Plaintiff's left knee was that there was mild to moderate degenerative change and no evidence of acute fracture or active bone lesion. *Id.*

15.     The following summary represents questions that were asked by the ALJ and the Plaintiff's attorney at Mr. Bartlett's first hearing on April 17, 1997. *See* R. at 22. The Plaintiff testified that due to his leg problems, he gets tired quickly and walks about a block and half before he must rest. *See* R. at 26 and 33. His leg hurts mostly at night and in the morning, but after taking Tylenol, the pain goes away.  *See* R. at 27. Mr. Bartlett rated his pain at a seven or eighth on a scale of ten. *See* R. at 26-27. He also stated that his condition affects his back and his right leg due to the stress he places on them to compensate for his left leg. His daily activities included watering the plants in his lawn roughly twice a week for two hours, watching television, dishwashing, and sometimes doing the wash. *See* R. at 28 and 36. Mr. Bartlett testified that he could sit for approximately 15 to 20 minutes and stand for approximately 20 to 25 minutes. *See* R. at 33.

## IV. DISCUSSION

16.     In support of her Motion to Reverse or Remand on behalf of her husband, the Plaintiff made the following arguments: she contends that the ALJ erred in finding Mr. Bartlett retained a residual functional capacity for a full range of medium work, that the ALJ failed to comply with the remand order from the Appeals Council; that the ALJ erred in denying benefits based upon Mr. Bartlett not buying prescription drugs or obtaining medical treatment; and that the ALJ erred in his determination of Mr. Bartlett's educational level.

## Residual Functional Capacity

17.     The Plaintiff first argues that the ALJ failed to properly determine the claimant's

residual functional capacity (RFC). Specifically, the Plaintiff finds suspect the fact the second ALJ

found the claimant capable of a full range of medium work when the first ALJ found the claimant to

be capable of a full range of light work.

18.     First, the Court agrees with the Defendant in that the current ALJ was not bound by

the Commission's previous determination. *See* SSR 96-5p. Here, the Appeals Council specifically

stated that the May, 1997 decision was vacated. *See* R. at 166. The case was thus remanded to

another ALJ for further proceedings to include all available updated medical records. *Id*. The new

ALJ was thus presented with medical evidence that was not in front of the ALJ in 1997. *See* R. at

208. Therefore, the ALJ was not bound by the Commission's 1997 findings.

19.     Second, I find the new ALJ's RFC determination is supported by substantial evidence.

The ALJ found that "[t]he claimant's impairments, excluding alcoholism, result in a finding that the

claimant is not disabled based on a residual functional capacity for a full range of medium work." *See*

R. at 147.

20.     After a claimant has established at step four that he or she cannot return to his

past relevant work, the burden shifts to the Commissioner to show that the claimant retains the

residual functional capacity (RFC) to do other work that exists in the economy. *See Hargis v.*

*Sullivan,* 945 F.2d 1482, 1489 (10th Cir.1991). Residual functional capacity is defined by the

regulations as "what you can still do despite your limitations." 20 C.F.R. § 404.1545(a); *see also*

*Davidson v. Sec'y of HHS*, 912 F.2d 1246, 1253 (10th Cir.1990). The ALJ's decision that a claimant

retains RFC to do other work must be based on substantial evidence as are most ALJ determinations.

*See Gossett*, 862 F.2d at 804. In determining a claimant's limitations, the ALJ should "first assess the

nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual

functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

The ALJ must also consider "all allegations of physical and mental limitations or restrictions and make

every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Careful

consideration must be given to any available information about symptoms because subjective

descriptions may indicate more severe limitations or restrictions than can be shown by objective

medical evidence." SSR 96-7p. Furthermore, in all cases in which pain or other symptoms are alleged,

the determination or decision rationale must contain a thorough discussion and analysis of the

objective medical and the other evidence, including the individual's complaints of pain or other

symptoms and the adjudicator's personal observations. SSR-95-5p.

21.     In this case, the ALJ relied on multiple factors. First, the ALJ found that the claimant

did not take prescription medication but only over-the-counter medications for pain. *See* R. at 27.

Second, after the claimant's surgery, his doctor noted the claimant was in no pain and that he would

be given a work release for April 1, 1996. *See* R. at 112. Third, the lower back pain the claimant

complained of was pain he experienced for over ten years. *See* R. at 120. And lastly, the latest

medical evaluation of the claimant stated there was no evidence of any acute fracture or active bone

lesion in the claimant's left leg. *See* R. at 208. The ALJ also noted the claimant's daily activities

included yard work, gardening, planting trees and flowers, cutting the grass and shopping, all

activities consistent with a full range of medium work.[3] The ALJ found that the claimant's statements

regarding his ability to sit for 15-20 minutes and stand for 20 to 25 minutes and walk only a block

---

[3]     Medium work is lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday. . . . The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. 20 C.F.R. § 404.1567(c).

and half before having to rest were not consistent with the record as a whole, and thus, were not fully credible.[4] The ALJ went on further to review the claimant's residual functional capacity in light of the Medical-Vocational Guidelines. 20 C. F. R. § 404 Subpt. P, App. 2 (the Grids).

22.     The Plaintiff argues that the ALJ's RFC determination is additionally flawed for two reasons: first, there was no RFC determination by a treating or non-treating physician; and second, neither Mr. or Mrs. Bartlett's testimonies provide evidence of an RFC of medium work. While the record does not include an RFC determination by a treating or non-treating physician, the RFC is an administrative assessment made on the basis of all of the evidence in the record, not only the medical evidence, and, as such, is well within the province of the ALJ. *See* SSR 96-8p (explaining that RFC is an administrative assessment made by "adjudicators at each level of the administrative review process based on all of the relevant evidence in the case record, including information about the individual's symptoms and any medical source statements.") (quotation omitted). In addition, the ALJ need not base his RFC determination on the claimant's testimony. *See id*. ("[t]he RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment."(emphasis added)).

23.     After reviewing the record, not only does the Court find that the ALJ properly explained and predicated his RFC determination on substantial evidence, but the record supports the finding that Mr. Bartlett was capable of an RFC to perform medium work. There is nothing to the contrary in the record that would indicate otherwise. Thus, the ALJ properly assessed the claimant's RFC and supported his determination with sufficient evidence.

---

[4]     "Credibility determinations are peculiarly the province of the finder of fact," and will not be overturned if supported by substantial evidence. *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir.1990) (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).

## **Remand Order**

24.      The Plaintiff next argues that the ALJ failed to fully comply with the Appeals

Council's remand order. As stated above the Appeals Council remanded this case with the following

instructions to the Commission:

> [t]he Administrative Law Judge will obtain any updated medical records that may be
> available . . . The Administrative Law Judge should reevaluate all the evidence and
> issue a new decision which follows the proper legal standard for cases involving DAA
> [drug and alcohol abuse]. The issue of the claimant's past relevant work should be
> addressed, considering only work in the last 15 years. The claimant's residual
> functional capacity should be compared with the specific demands of his past relevant
> work. If it is found that the claimant could not have done this past relevant work,
> vocational expert testimony should be arranged regarding other jobs. *See* R. at 166-
> 67.

The Plaintiff specifically argues that the ALJ relied on the application of the Grids and not the

testimony of a vocational expert in order to determine the claimant's residual functional capacity.

First, I find that the language in the Appeals Council order regarding the claimant's RFC is not

mandatory. Second, I find that the ALJ was proper in relying on the Grids and not a vocational expert

in determining whether or not the claimant was disabled.

25.      The Grids are used at this step to determine whether disability exists. 20 C. F. R.

Part 404, Subpt. P, App. 2. The Grids reflect the existence of jobs in the national economy at various

RFC levels by incorporating administrative notice of occupational publications and studies. 20 C. F.

R. §§ 404.1566(d); 416.966(d). This aids the Commissioner in determining what specific job types

in the national economy the claimant can perform. The Grids assume that the claimant's sole

limitation is lack of strength, i. e., an exertional impairment. 20 C. F. R. Part 404, Subpt. P, App. 2,

§2000(e)(2).

26.      Application of the Grids is appropriate only if the claimant is capable of performing

a full range of work required at a particular exertional level on a daily basis and if the claimant

possesses the physical capacity to perform most of the jobs falling within that category. *See Ragland*

*v. Shalala*, 992 F.2d 1056, 1058 (10th Cir.1993).  Where a claimant's exertional capacity is further

restricted by non-exertional limitations, however, reliance upon the Grids is misplaced. *Id*. An ALJ

may rely on the Grids when evaluating non-exertional impairment if the claimant's testimony is not

entirely credible. *See Williams v. Bowen*, 844 F.2d 748, 755 (10th Cir. 1988) (credibility

determinations are province of ALJ) (*cited in Castellano v. Sec'y of HHS*, 26 F.3d 1027, 1029 (10th

Cir. 1994)). The Supreme Court sustained the use of the Grids in appropriate situations as a

legitimate method of making disability determinations more uniform. *See Heckler v. Campbell*, 461

U.S. 458, 467 (1983). It noted that use of the Grids avoided the necessity of calling a vocational

expert to testify in each case in which step five of the evaluation process was reached. *Id*.[5]

     27.     In this case, the ALJ precisely determined that the claimant's complaints were not

credible and that his allegations of his pain constituting a nonexertional limitation were not supported

by medical evidence. The ALJ relied on medical evidence pertaining to claimant's statements to his

treating physicians. *See* R. at 112. Since there was no credible indication of a nonexertional limitation,

the ALJ properly established his residual functional capacity to do medium work.[6] He then properly

---

[5]     Instead, the vocational expert could be reserved for special situations where a claimant did not fit the grids and additional evidence was necessary. Use of the Medical-Vocational Guidelines is predicated on an impairment that limits the strength or exertional capacity of the claimant. Therefore, if a claimant's impairment is of a different nature, the grids may not be fully applicable. For instance, the regulations note that certain mental, sensory, or skin impairments, environmental restrictions, or postural and manipulative restrictions may be independent from exertional limits. 20 C.F.R., pt. 404, subpt. P, app. 2, § 200.00(e) (1986). Where such "nonexertional" limitations combine with exertional limitations which do not in and of themselves establish a disability, then the grids are to provide no more than a framework for determining disability. The hearing officer is not to automatically or mechanically apply the grids but instead must consider all the relevant facts in determining whether the nonexertional limitations diminish the claimant's ability to perform other work. *Id*. at § 200.00(e)(2). *Talbot v. Heckler*, 814 F.2d 1456 (10th Cir. 1987) (citing *Heckler v. Campbell,* 461 U.S 458 (1983)).

[6]     Although neither party raises the claimant's use of alcohol and its effect on his ability
to work, the ALJ's analysis properly disposed of the issue. Because the ALJ properly found the claimant was not

relied on Rule 201.27 in 20 CFR 404, Appendix 2 to Subpart P (Medical Vocational Guidelines - "Grids") to find that he was not disabled. *See Heckler*, 461 U.S  at 458.

## Prescription Drugs

28.     The Plaintiff argues that the ALJ erred in denying benefits based upon the claimant's failure to take prescription drugs. When there are complaints of pain offered by a claimant, the ALJ must consider the complaints by evaluating his use of pain medication, his attempts to obtain relief, the frequency of his medical contacts, and the nature of his daily activities, as well as subjective measures of credibility including the consistency or compatibility of non-medical testimony with the objective medical evidence. *See Kepler v. Chater*, 68 F. 3d 387, 391 (10th Cir. 1995).

29.     As stated previously, the ALJ considered multiple factors, including the fact Mr. Bartlett did not take prescription pain medications. *See* R. at 145. The ALJ also relied on numerous other factors including the claimant's statements to his treating physicians and his daily activities. *Id*.; *see also* R. at 112, 120, and 208. Therefore, the ALJ was not in error by focusing on the claimant's medication usage.

## Education Level

30.     The Plaintiff contends that the ALJ improperly found that he had a "limited" seventh grade education and the ability to perform semi-skilled to skilled work. *See* R. at 146. Specifically, the Plaintiff argues that someone with a "seventh through eleventh grade education is usually considered to have a limited education" and is generally not considered capable of

---

disabled, there was no need to determine the material effect of the claimant's alcohol use on his ability to work. *See* 42 U.S.C.A § 423 ("An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.").

performing semi-skilled through skilled work. *See* Plaintiff's Brief at 12 (citing 20 C. F. R. §§ 404.1564(b)(3); 416.964(b)(3)). Even if the ALJ found that the claimant was illiterate and unable to perform even semi-skilled work, this finding would not have affected the result of the ALJ's disability finding. The Grids applied in this case provide for an individual whose education is "limited" or "less." *See* 20 C. F. R. Part 404, Subpt. P, App. 2, §203.12 and 203.19.

RECOMMENDED  DISPOSITION

The ALJ did apply the correct legal standards and his decision is supported by substantial evidence. I recommend that the Plaintiff's Motion to Reverse and Remand Administrative Decision, filed September 4, 2001 (*Doc. 12*), should be **DENIED**. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C).  Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C),  file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102.  A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.


_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**

14